Yes, thank you, Your Honor, and I would, just to note, I'm going to try to stop and allow myself about two minutes of my argument for rebuttal. So thank you for clarifying that, and good morning, Your Honors, and may it please the Court. My name is Garrett Chase, and I do represent the appellant, Suzannah R. Noonan IRA, LLC, in this matter. Your Honors, this appeal presents one fundamental issue before the Court, which is whether Nevada's claim preclusion doctrine bars a subsequent action filed by a successor in interest after a valid and final judgment was entered by the State Court. Specifically, appellant requests in this appeal that this Court reverse the lower court's decision granting summary judgment in favor of the respondent, HSBC, for two important reasons. The first reason is that the lower court explicitly relied upon the wrong standard as the basis for its decision with regard to the claim preclusion issue at that level. And that constitutes clear error and warrants reversal. And second, based on the application of the correct standard under Nevada law for claim preclusion, the subsequent action filed by HSBC should have been barred in its entirety. Your Honors, turning to the first issue, if we look at the lower court's decision on page 6 of the record, we see that the lower court explicitly relied upon the wrong standard, and namely relied upon the issue preclusion standard as opposed to the claim preclusion standard, as the basis for that decision. This court articulated in Holcomb v. Hosmer that... Could I bring you to your second argument, actually, because you don't have that much time? Sure. Assuming that there was an error and it should have been claim preclusion, can you speak to how we can be confident that the privity requirement is satisfied? Absolutely. And that's really the crux of this whole claim preclusion argument, right, which is the chain of privity, if you will, between HSBC and the original lender, Fremont. And so if we look at what this court has articulated as privity within the context of a claim preclusion analysis, we see that that element is met. So looking at the court's decision in Stratosphere Litigation v. Grant Casinos, the court identified privity within claim preclusion as, quote, Later in the Tahoe Sierra case, this court identified that privity as existing where there is a substantial identity between the parties and where there is a commonality of interest. So is there something in the record that tells us that Fremont was still the deed holder at the time of the state court action? So there's not, and this speaks to one of sort of the complications of the MERS system, as it's described more in depth in the Edelstein v. Bank of New York Mellon case, is that there is sort of a question there, right? The public records, and this is in the record on appeal, the public records at the time of the original action showed that Fremont investment and loan was the originator of the entire mortgage interest, which encompasses obviously both the note holder and the deed of trust. MERS then is explicitly identified as a nominee of Fremont. And that's important because in the Edelstein decision, after breaking down what it is that MERS does, which is allow for these non-recorded transactions and trades of the note and the deed of trust, Edelstein clarified that MERS is explicitly an agent of the original lender. And so that being the case, MERS being an agent of Fremont, and there being that, well, first that specifically addresses the issue of privity there between Fremont and MERS. But only if Fremont was still in the picture. Like, hypothetically, if Fremont had sold to, I don't know who, some Bank X, and Bank X was the holder at the time of the state court action, then maybe Bank X and MERS would be in privity with HSBC. But if Fremont has no interest in the house anymore, I don't see how Fremont would still be in privity at that point. So it does seem like we need to know whether Fremont was still in the picture or not. Because if they weren't, they didn't have an interest that was the same as the later people. Right. And that's one of the limitations to the MERS system, is that there's that question there. But what we can say in looking to what the requirement is under 5-star for privity, is that there's some privity, there's a commonality of interest. And because MERS was at least an agent to represent that interest from Fremont, and then all of that interest was eventually transferred to HSBC as the basis for its second lawsuit, that successor in interest chain between HSBC and Fremont satisfies the privity requirement for a claim preclusion analysis. Even if at the time of the state court action Fremont had sold to Bank X and Bank X had sold to Bank Y, so Fremont was like two entities back and had no interest in the house, you still think they would be in privity at that point? So that's an interesting, I mean, that creates an interesting problem for the first judgment, right, is that there's a question there. And so the thing is, is that under claim preclusion doctrine in Nevada, even if there is some perceived deficiency there, right, with the original judgment, the court in 5-star said that those types of deficiencies, even if they are 100% valid, don't warrant upsetting claim preclusion doctrine. I understand that. So I understand even if the decision, the state court action decision was wrong maybe. Maybe they should have joined someone who they didn't join, but that's not really what I'm asking. In order for claim preclusion from, so you had a judgment against Fremont, and in order for that to have claim preclusion with a later suit, there needs to be privity between the defendant in the later, or the party in the later suit and Fremont. And if Fremont didn't have any interest in the house anymore, then they didn't share an interest for privity for purposes of claim preclusion. And it seems like we may have a gap in the record. So I'm just trying to figure out what we do about that gap. Sure. Well, and it does present an interesting problem with what you said, you know, you characterized as a gap in the record. What we do have in the record is indications that at the time of the original judgment, Fremont was, as a matter of public record, the originator of both the note and the deed of trust interest. So even if there was a privity issue there, right, even if Fremont had at that time transferred an interest or was defunct or whatever that issue was, there's still sufficient privity because Fremont is the originator of the interest that HSBC now claims as the basis for its claims. And so if there's some issue. But I don't know that that makes sense because if Fremont wasn't the owner and had sold to Bank X that had sold to Bank Y, and so Fremont is completely out of the picture, then they have no interest in defending the state court action. And the whole point of claim preclusion is, and privity is, was the party in the same position? Did they have the same interests as the later party? And if Fremont didn't own the deed, then they didn't have that interest. Right. And again, I mean, the problem is, is that as a matter of public record, they still maintain some interest, right? Based on the documents that were recorded at that time, Fremont was indicated as the originator of that interest. Okay. That was my original question. So, like, do we know that at the time of the state court action, Fremont was still the deed holder? And like I said, the problem is, is that public record speaking, that's who was indicated as the deed holder, right? And, of course, the deed of trust nominates MERS as the nominee for Fremont and lists them as that. And so there is that aspect to it. But as a matter specifically of public record, in terms of looking at this from a quiet title perspective, you know, back in 2014, Fremont was indicated as the current holder. And again, because MERS is explicitly there to avoid public recordings, right, we don't know exactly if the note or deed of trust had been passed along, or rather the deed of trust interest had been passed along to Bank X. But as a matter of public record, Fremont was identified as the interest holder. But does this need, I mean, if we agree with you that there was an error as to using issue preclusion instead of claim preclusion, would we need to remand so the district court could figure out if there was any other record beyond the public record? Or do you think we're in a position to resolve this privity issue at this point? Your Honor, at this point, I think this court is in a position to resolve the privity issue. Alternatively, the court absolutely can remand for further investigation into that issue by the lower court. As you said, the fact that they explicitly relied upon the wrong standard probably warrants remand in and of itself to resolve that. But then again, if we look at, you know, the Tahoe, Sierra, and the Stratosphere direction, and then we look at cases like Mendenhall v. Tassinari that confirms that the successor in interest relationship is sufficient privity in claim preclusion, we would argue that this court is in a position to resolve that privity issue right now and simply reverse the lower court's decision. Counsel, Judge Gould, I would like to interject a few questions. I realize we've gone past where you wanted to start rebuttal, but don't worry. I'll give you minister rebuttal whenever Ms. Miller has concluded. Thank you, Your Honor. You've got that. But my question is this. In some states, race judicata laws, there are exceptions to applying the doctrine. If the second court looks at it and thinks the first court was clearly wrong or if it would be unjust, I wanted to know if Nevada had anything like that in the applicable state law here. And then I wanted to ask you a question about that. Absolutely, Your Honor. So in terms of the standard for race judicata and for claim preclusion as articulated in Five Star, what the court said there is that no. If the second court looks back and says, look, there's some issue with the first court's decision, if there is a procedural or some other avenue that that could have been resolved, then what Five Star says at page, I believe it's 716 of the opinion, is that the proper course of action is to resolve that issue through the original judgment. And so in this case, as HSBC even acknowledges in its answering brief, what should have happened is when HSBC received that transfer of interest or the purported transfer of interest from MERS, the default judgment that was entered against Fremont had already been recorded. In fact, it was recorded in October of 2014. And so at that time, what HSBC should have done and what the proper course of action would have been would be to seek to set aside that default judgment. And importantly, and I'll try not to be too long-winded in my answer, but importantly, what Five Star clarifies is that those types of deficiencies, even though it may cause some issue for this party down the line, the specific relief to that one party does not warrant upsetting claim preclusion doctrine as a whole. And even applying claim preclusion to bar those second lawsuits, even in instances where there's some mistake in the first lawsuit, the court says both comports with common sense and with public policy. Then I have a factual question for you. Yeah. That I'm sure is shown on the record, but that I didn't recall. What's the amount, the quantum of dues that were unpaid that led to the HOA foreclosure action? And I realize this was a long time ago, but you may have that at your fingertips. Your Honor, I don't remember specifically. I do have the record right here, and I can briefly pull it up to answer your question, or I can wait and address it in my rebuttal briefly if you want to move on to Ms. Miller. I think that's fine. Okay. Thank you. Why don't we give you three minutes for rebuttal if you want to plan for that. Thank you. Then, Ms. Miller, could you please proceed? Thank you, and good morning, Your Honors. Christina Miller for Apelli HSBC Bank. Before this court, there is a single issue, as you've noted, as to whether a prior default judgment obtained by appellant has preclusive effect on this quiet title action by HSBC. We submit to this court it absolutely does not. And that's because appellants simply named the wrong party. They named Fremont. And I think there's become a fundamental misunderstanding in the interest that Fremont has held in the past as the originating lender versus the interest held by the beneficiary of the deed of trust. And a couple acknowledgments I'd like to make to this court to start, the first being we do recognize that the district court may have erred in referring to claim preclusion but then addressing an element of issue preclusion in its response. We do not believe that that equals reversible error. Secondly, and more importantly, to Judge Friedland's question to appellant, we recognize the district court didn't address privity previously, even though it was briefed before the district court. But that does not prevent this court, upon its de novo review of the record and the authorities, from still resolving the privity issue at the appellate stage. So we heard from appellant that there's a line of cases saying that there is privity between Fremont and HSBC because they have a quote-unquote sufficiently close relationship. But that sufficiently close relationship through the line of cases set forth in the reply brief actually prove the opposite when we look at those cases and apply the facts in the record here. So the sufficiently close relationship as set forth in the In re Shimmel case requires that the non-party has succeeded to the prior party's interest, the non-party has controlled the original suit, or the non-party's interest was adequately represented in the prior suit. But here, none of those relationships exist, and there's certainly no evidence in the appellate record to show otherwise. And this is the most important point, Your Honors. HSBC Bank did not succeed to Fremont's interest. They succeeded from MERS's interest as the beneficiary of record. But wasn't MERS acting as an agent for Fremont? I don't understand how that argument could be correct. So, Your Honor, under Nevada law and specifically the Edelstein decision, it clarifies the relationship between the originating lender and then the beneficiary of record. And Edelstein recognizes that while MERS is acting as the nominee for the lender and the beneficiary of record,  does not preclude MERS's separate position as the beneficiary of record. So I understand, if I understood the cases you were citing, I understand that in the state court action, really MERS should have been named, and it wasn't. So I think there was an error in the state court judgment. But we have the five-star case that says that doesn't matter for claim preclusion. We have to follow the state court judgment anyway in applying claim preclusion. So I think the question is not whether MERS should have been joined in the state court action. I think the question is whether HBC is a successor in interest to Fremont. And I don't understand still why that isn't the case. Your Honor, let me give you some further explanation then from Edelstein. Because Edelstein explains that in Nevada, the note and the deed of trust, because they're two separate documents, they, after origination, they can be split. They can be transferred separately. They can be assigned to completely different entities. And the only time they're ever required to be reunified is at the time of foreclosure. So, and again, when we're talking about title to real property, in Nevada, the Nevada Supreme Court, and I'll point this court to the 2019 Resources Group case, has confirmed that the relevant line of inquiry is the beneficial interest. It's the beneficiary of record who's entitled to receive notices prior to foreclosure. That interest is the one that is protected by the deed of trust. Do we have any case that says, for purposes of privity, they aren't both in privity? I mean, it seems like there's at least a logic to the idea that the deed holder plus MERS would both be in privity with whoever comes later. Because they both have an interest that comes to the entity later. To a certain extent, Your Honor. But the note holder really, when they don't, when they're not also the beneficiary of record, they actually don't have any rights or obligations to protect that deed of trust because they have no record interest in the deed of trust. It's really only the beneficiary who has that interest. And again, that's what Edelstein confirms for us. But doesn't, doesn't, I mean, so Fremont may be odd because they went bankrupt or whatever, but if a bank has the deed of trust and MERS is their agent and transfers the deed of trust to a different bank, doesn't the first bank make some money for that? Yes, but Your Honor, it's not the bank transferring the deed of trust. It's MERS assigning the deed of trust out. Okay, but they still make money. They still have an interest in the deed. They own it, then they don't own it. They get money for having sold it. I mean, it's not like they don't have any interest. Well, and that's, Your Honor, that's where the slight issue here is, is that HSBC's interest is solely as the beneficiary of record of the deed of trust. There's absolutely nothing in the record to show that HSBC is a successor in interest to the originating lender's interest, Fremont. Because you think a different lender was in between or why not? Because the record document, the assignment of the deed of trust, expressly states that HSBC is being assigned the beneficial interest only from MERS. It's silent as to whether there's any transfer of the note. So, silent as to whether there's any transfer. But doesn't it say that MERS is acting as the nominee for Fremont? It does, but Your Honor, that's exactly what Edelstein clarifies for us. And I'd like to quote from the Edelstein case for you on page 260. It says, MERS is capable of being a valid beneficiary of a deed of trust separate from its role as agent, parentheses, nominee for the lender. So, again, it's clarifying these are two separate and distinct interests that can be held as part of the loan. Ms. Miller, I'd like to, if I could, I don't mean to interrupt on Judge Friedland's question, but if I could interject a sole question for you to address before all your time is, I'd appreciate it. I thought that the district court relied on a doctrine of Nevada law that said if a mortgage holder made a valid tender of the super priority amount, that they would preserve their mortgage interest and it could not be foreclosed. And the district court mentioned the Diamond Spur case. And so I wanted to know, I don't think I heard from Mr. Chase or you on that rationale. Was the district court right or wrong in saying that here? Thank you, Your Honor. And the district court was absolutely correct. Under Nevada law, it is settled in Nevada a valid preforeclosure tender of an amount sufficient to satisfy the super priority portion of an HOA's lien automatically operates as a matter of law to extinguish the super priority portion and therefore protect the deed of trust. And Your Honor, I'd submit to you, you haven't heard argument in any of the briefs or from Mr. Chase or I today, because that argument and that ruling from the district court regarding the tender of protecting the deed of trust is uncontested on appeal. That is a binding judgment from the district court. And I'd also, I did submit a supplemental authority to this court yesterday, and I apologize for the late notice. But in the Saticoy Bay McLaren case, the Nevada Supreme Court en banc in December of 2020 clarified that that preforeclosure tender, again, operates automatically as a matter of Nevada law to protect the deed of trust. But does that mean the default judgment in state court was erroneous? Yes, Your Honor, I'd submit it would, and I'd submit that it goes to that second element of the claim preclusion doctrine. So even if there was privity, which again, we submit there is not, but even if there was, there's no final valid judgment. And we did concede in our briefs that on the claim preclusion analysis, a default judgment can be a final judgment, but that final judgment must still be valid. And here under Nevada law, the default judgment cannot override what has operated automatically pursuant to the tender. So how do you deal with five star from Nevada, which says that if a decision is wrong, it doesn't matter for claim preclusion? Well, Your Honor, I'd still go back to then it's non-analysis of whether it's wrong. It's an analysis of whether it's a valid prior tender, excuse me, prior default judgment. So even if that default judgment exists and we don't have to go in and challenge it's wrong, we just have to say it's not valid. Well, what's the difference between invalid and wrong? I mean, it seems like if the court shouldn't have entered it because there was a tender, then it's wrong. I mean, what's the difference between invalid and wrong? And Your Honor, I'd submit it goes to the procedural aspects of it. If we felt it was wrong and shouldn't have been entered, and if we were in privity with Fremont, we should have gone to the district court that entered the default judgment and tried to set it aside on the basis that it's wrong. But here, because HSBC's interest is not aligned with Fremont's, they didn't get their interest from them, they're entitled to bring a new lawsuit and simply disregard that default judgment that has absolutely no force and effect. So does that collapse then to the privity point? Really the only issue here is the privity point? Your Honors, we would submit that that ultimately is the main issue before this court. And simply put, there's no privity. It's admitted in the record by appellant, and in fact, in its renewed summary judgment briefing, it cites to the deed of trust in the assignment and specifically states the beneficiary of record was MERS, and the assignment was from MERS to HSBC. And Your Honors, I see I'm well over my... Could I just ask one more? If this was sent back to the district court to explore privity further, are there further facts that you could submit, or do we have everything that exists? Your Honor, the only other facts would be who the holder of the note is from Fremont. But again, I'd submit to you under Edelstein, that is irrelevant to the analysis of whether a deed of trust remains a valid encumbrance on title in a quiet title action that comes from an HOA foreclosure sale. The ownership of the note is only relevant at the time of foreclosure. So it really, we could develop those facts, but it's completely irrelevant to the inquiry of HSBC's interest at this point. Okay, counsel, you're over your time, but you probably should take all the time you need to answer Judge Friedland's question, because we took Mr. Chase over his time, and he's getting some more. You'll end up sort of on a level playing field, but at some point, so we don't wear out the court reporter, the court clerk, rather, and anyone else who's paying attention. We should bring the argument of appellee to a close. So do you have anything else you need to say? No, thank you, Your Honors. I'll conclude there. Thank you, Ms. Miller. Now, Mr. Chase, so you asked for two minutes, but you're getting a bonus minute. So we're giving you three minutes of rebuttal. Yes, thank you, Your Honor. So to specifically address your question, it looks like the amount at the time of the foreclosure sale originally was about $7,000. There is a ledger that's provided at pages 272 through 276 of the record, but that $7,000 amount is included in the declaration of value on the foreclosure deed. So that's presumably the amount that was owed at the time of the foreclosure sale. Okay. And then just briefly— Do you know factually what the amount of the outstanding loan is that the bank is trying to reserve? I don't, Your Honor. I can pull it up again real quick if you'd like me to. It is in the record, and I believe it's at page 180 of the record, but I don't recall the exact amount. You don't have to waste time on that. But where I'm coming from in asking these questions is that— and I don't know the precise—everything that's been said in Nevada on this. But in a lot of ways, preclusion cases from various states I've seen, there's been like an exception to the preclusion if it was felt that the decision reached was unjust. So that was one of the issues that was in my mind as to what the stakes were on the various foreclosures. Sure, and that is—if we look at, for example, the Montana v. United States decision, which is sort of a broader approach to both race judicata and collateral estoppel, that doctrine does articulate those types of concerns, if there's any special circumstances or issues that would require that the court set aside the application of either race judicata or collateral estoppel claim or issue preclusion. But that's specifically not the standard in Nevada based on Five Star. And that speaks a little bit to the commercial reasonableness of the sale or the issue that Ms. Miller just raised, which is this valid tender. The problem is that those are all issues on the merits that should have been addressed in the first proceedings. And obviously HSBC wasn't a party. They hadn't received their interests. But to the extent that they're not raised on appeal, it's not necessarily that those aren't contested issues within the overarching dispute between the parties. It's that they're just not relevant to the narrow claim preclusion analysis that was articulated in Five Star. Speaking real quickly to the privity issue again, which I know has been kind of the crux of this decision, to say that there is no privity between a successor and interest to its predecessor is just not supported by either Ninth Circuit or Nevada law. Fremont originated the interest that HSBC now holds. That puts them in privity. If you look at cases like Radford v. U.S. Bank, they say that. I see that my time is up, and so if there are no other questions, I'd just like to say thank you for your time, and that appellant requests a reversal or remand of the lower court's decision. Okay. Thank you. The case will now be submitted, and the parties shall hear from us in due course. I want to add an additional note of thanks to Mr. Chase and Ms. Miller for appearing for their arguments in trying pandemic times. Looks like things may be getting a little better, but we'll get back to where we can all be in a courtroom together.  Thank you, Your Honors. Okay. Thank you, and stay safe and good luck. Thank you, Your Honors. You too. You too.
judges: Wallace, Gould, Friedland